UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACOB JEFFREY URBAN,

Plaintiff,

v.

Case No. 25-cv-1005-bhl

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Jacob Jeffrey Urban applied for disability insurance benefits when he was thirty-one years old alleging a disability onset date of June 1, 2021. (ECF No. 8-1 at 105.) After Urban's claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id.* at 111–21.) The ALJ held a video hearing on April 25, 2024, and, in an August 1, 2024 decision, concluded that Urban was not disabled and denied his claim. (*Id.* at 19–31.) Urban seeks review of this final decision denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §405(g). (ECF No. 1.) For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

In his decision, the ALJ reviewed the medical records and noted that Urban, an auto mechanic, injured his lower left abdomen installing a lift kit on a truck on December 20, 2017. (ECF No. 8-1 at 24, 287.) Urban was initially diagnosed with an abdominal strain and returned to light duty, but his symptoms persisted. (*Id.* at 24.) Diagnostic testing revealed an umbilical hernia and Urban underwent surgery in April 2018 to insert a mesh, a screen-like medical implant used to reinforce tissue, after which he returned to work, but his symptoms did not improve. (*Id.* at 24, 287–88.) The ALJ noted that in 2019, further testing and imaging revealed that Urban had peripheral neuralgia and a left varicocele. (*Id.* at 24 (citing ECF No. 8-1 at 310).) He was later

diagnosed with left ilioinguinal neuralgia, left iliohypogastric neuralgia, and chronic abdominal pain. (*Id.* at 24, 26 (citing ECF No. 8-1 at 417, 424–26, 429–30, 496, 498, 510).)

The ALJ continued his review of the medical evidence and noted that in April 2021, Urban presented to his doctor with worsening left-sided abdomen and groin pain. (*Id.* at 24 (citing ECF No. 8-1 at 275).) On examination, he had mild tenderness to palpation of his left mid to lower abdominal wall and in the left inguinal ring. (*Id.* (citing ECF No. 8-1 at 275).) He had full left hip range of motion and was prescribed naproxen. (*Id.*) At a June 2021 pain management appointment, Urban reported that left ilioinguinal and iliohypogastric nerve blocks performed in August 2020 helped for about three months. (*Id.* (citing ECF No. 8-1 at 328–29).) In September 2021, Urban underwent another round of nerve blocks. (*Id.* at 25.) At a follow-up appointment in November, Urban reported 50% improvement in groin pain and ability to walk with the nerve blocks. (*Id.* (citing ECF No. 8-1 at 373).) He still had some abdominal cramping and was taking Flexeril and Lyrica to address his pain. (*Id.*) In April 2022, Urban reported to his doctor mildly irritating muscle spasms in his left lower quadrant and was eager to get his next round of nerve blocks. (*Id.* (citing ECF No. 8-1 at 364).) In August 2022, Urban reported that the April 2022 injection was 50–75% effective and that the effectiveness lasted 3.5–5 months. (*Id.*) On exam, Urban had pain to palpation along his abdominal area and left groin, however, his coordination and gait were normal and he had no sensory deficit and no weakness. (*Id.*) His provider ordered repeat nerve blocks and told Urban to take cyclobenzaprine more often as it had been of benefit with flare management. (*Id.* (citing ECF No. 8-1 at 393).) In September 2022, Urban underwent nerve blocks and in December, he had no weakness on examination. (*Id.* (citing ECF No. 8-1 at 393).) He reported persistent pain but reported 60% pain relief and functional improvement with respect to walking. (*Id.* at 25–26.) In January 2023, Urban underwent a peripheral nerve stimulator implant and at that time, he had a normal gait and 5/5 strength in his bilateral lower extremities. (*Id.* at 26.) During a follow-up appointment, Urban reported a 60% improvement in abdominal and groin pain over baseline pain and had no other complaints. (*Id.* (citing ECF No. 8-1 at 429).) The plan was to proceed with a permanent implant, but his insurance denied the request. (*Id.*) Urban continued to receive nerve blocks in April, July and October 2023 and January 2024. (*Id.*) The ALJ found that Urban's examinations, while showing tenderness and some limitation in range of motion were overall good, demonstrating normal gait, coordination, and strength. (*Id.* at 27 (citing ECF No. 8-1 at 397-98, 432–33, 451).)

Urban's medical records were reviewed by state-agency physicians, both of whom found that Urban could perform sedentary work. (*Id.* at 27–28.) State agency medical consultant Mina Khorshidi, M.D., found that Urban could stand/walk two hours, sit six hours in an eight-hour workday, lift twenty pounds occasionally and ten pounds frequently and stoop occasionally. (*Id.* at 93.) She supported her limitations with reference to Urban's functional capacity evaluation and other examination findings in the record, Urban's treatment history, and his symptom report. (*Id.*) State agency physician Karen Schnute, M.D., also found Urban capable of performing sedentary work and determined he could lift and carry twenty pounds occasionally and ten pounds frequently, stand/walk four hours, sit six hours, frequently stoop and climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. (*Id.* at 101–02.)

At the hearing, Urban testified that he works part-time as a service writer, three days per week in shifts of about four hours. (*Id.* at 23, 65–66.) He testified he has an adjustable desk at work and stands 50% of the time and sits 50% of the time, depending on how he is feeling. (*Id.* at 23, 66–67.) Urban also testified that he drives twenty-five minutes to and from work and has had to get out of his car and stretch to address spasms and cramps. (*Id.* at 23, 69.) Urban testified that he is able to lift no more than half a gallon of milk and could not lift up items from the ground. (*Id.* at 23.) Urban further testified that his girlfriend did the household chores, shopping, and yardwork and helped him with bathing and dressing. (*Id.*) On a typical day when he is not working, Urban testified that he takes his medications, naps, sits and stands as needed, and watches television. (*Id.* at 23.)

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one of his analysis, the ALJ concluded that Urban had not engaged in substantial gainful activity since June 1, 2021, the alleged onset. (*Id.* at 21.) The ALJ next found at step two that Urban had severe impairments of abdominal wall strain with chronic pain/neuralgia. (*Id.*) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's listings of impairments. (*Id.* at 22.) The ALJ then found that Urban had the Residual Functional Capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §404.1567(a) except that Urban can occasionally climb ladders, ropes and scaffolds, climb ramps and stairs, stoop, crouch and crawl. (*Id.* at 22.) At step four, the ALJ found that Urban had no past relevant work as his prior work as an automobile mechanic was performed more than five years ago and did not qualify. (*Id.* at 29.) At step five, the ALJ found that there were a significant

number of jobs in the national economy that Urban would perform and therefore determined that Urban was not disabled. (*Id.* at 30–31.) On May 9, 2025, the Appeals Council denied Urban's request for review of that decision. (*Id.* at 5–7.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Urban argues that the ALJ made three primary errors requiring a remand. First, Urban contends that the ALJ's decision was impermissibly based on the ALJ's lay interpretation of the

objective medical evidence resulting in an RFC that was unsupported and inconsistent with the medical evidence. (ECF No. 11 at 7–14.) Second, Urban argues that that ALJ's RFC failed to accommodate all of his conditions and the ALJ erred in not supporting his concentration, persistence or pace limitations or his adapting and managing limitations. (*Id.* at 14–23.) Third, Urban argues that the ALJ's analysis of Urban's subjective symptoms was patently wrong. (*Id.* at 23–26.) Based on the record before the ALJ and the ALJ's decision, none of these challenges support a remand. Accordingly, the Commissioner's decision will be affirmed.

**I. The ALJ's Residual Functional Capacity is Supported by Substantial Evidence.**

Urban complains that the ALJ's RFC assessment "did not align with *any medical opinions*." (ECF No. 11 at 7 (emphasis in original).) The regulations, however, do not require the ALJ to base the RFC on a specific medical opinion or prior administrative medical finding from a state agency doctor. The ALJ's job is to weigh the evidence and determine a claimant's functional capacity. *See* 20 C.F.R. §404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); 20 C.F.R. §404.1520c(a) ("We will not defer or given any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). The ALJ need not rely on a medical opinion in determining a claimant's RFC. *See Schmidt v Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") Here the ALJ evaluated evidence from multiple sources and crafted the RFC, which is exactly what he is tasked to do.

Urban argues that the ALJ should have given more weight to the opinions of Keith Pride, M.D., Urban's pain management provider, and Dena Piechowski, APNP. (ECF No. 11 at 8–12.) But disagreement with the ALJ's decision is not a basis for remand. The ALJ explained why he found neither opinion persuasive. (ECF No 8-1 at 28.) Dr. Pride opined that Urban would only be able to complete four hours in a workday with a lifting limitation of twenty pounds and no repeated or excessive bending or twisting. (*Id.* at 349.) The ALJ stated that he found Dr. Pride's opinion not persuasive because it was not supported by his examination notes and was not consistent with the overall evidence or record. (*Id.* at 28.) The ALJ noted that when Dr. Pride

reaffirmed these limitations in April of 2022, Urban endorsed only mildly irritating muscle spasms and reported improved pain and functioning with treatment, particularly with the prescribed nerve blocks. (*Id.* at 28 (citing ECF No. 8-1 at 301, 304–05, 322, 364, 373, 397-98, 446, 451).)

Nurse Practitioner Piechowski opined that Urban could sit for one hour and stand for thirty minutes, sit for four hours and stand/walk for four hours total in a day, could rarely lift ten pounds, walk one block at a time, and further limited him to no stooping or climbing ladders, rarely crouching and occasional climbing of stairs. (ECF No. 8-1 at 28.) She opined that Urban would be off task 25% or more of the day and absent three days per month due to his impairment and impairment-related symptoms. (*Id.*) The ALJ explained that he found Ms. Piechowski's assessment unsupported because she did not cite any clinical findings in support of the significant limitations she assessed including her exertional restrictions and time off task and absences were out of proportion to the evidence. (*Id.*) The ALJ further noted that Ms. Piechowski relied on Urban's reports of pain, but the medical evidence documented improvement in his pain and functioning with medication and injections. (*Id.* (citing ECF No. 8-1 at 301, 304–05, 322, 364, 373, 397-98, 446, 451).)

The ALJ's explanation for discounting the opinions of these providers was sufficient and supported by substantial evidence. In addition, the ALJ also found the administrative findings of Drs. Khorshidi and Schnute were more consistent with the evidence. (*Id.* at 29); *see Crowell v. Kijakazi*, 72 F.4th 810, 815–16 (7th Cir. 2023) (noting that the ALJ sufficiently explained why he gave the most weight to the opinions of two state agency psychologists and holding that an ALJ "is not obligated to give controlling weight to the treating physician if he finds that opinion not worthy of such weight."). Although Urban complains that the ALJ found that Urban was more limited than the state-agency physicians did, that argument does not establish grounds for remand. (ECF No. 11 at 13.) The ALJ augmented the state agency physicians' findings and limited Urban to occasional postural activities to accommodate his reports of pain, muscle spasms, and cramping. (ECF No. 8-1 at 22–29.) As previously noted, it is the ALJ's job to evaluate the evidence and craft the RFC – the most a claimant can do in the workplace.

Urban next argues that the ALJ did not accommodate "the full impact of Plaintiff's severe abdominal wall strain with chronic pain/neuralgia and obesity." (ECF No. 11 at 14–15.) The ALJ explained that Plaintiff's obesity was not a severe impairment because "there is no evidence of any specific or quantifiable impact on the claimant's pulmonary, musculoskeletal, endocrine, or

cardiac functioning." (ECF No. 8-1 at 22.) The ALJ did consider the impact of Urban's weight on his ability to ambulate as well as his other body systems in assessing the RFC. (*Id.*) In conclusion, the ALJ thoroughly reviewed the record and sufficiently explained how the RFC restricting Urban to sedentary work accommodated Urban's severe impairments.

## II. Urban's Allegation that the ALJ Should Have Included Mental Health Limitations in the RFC is Not Supported by the Evidence.

Urban contends that the ALJ also committed error requiring remand by not including RFC limitations for concentration, persistence, and pace and adapting and managing himself. (ECF No. 11 at 15–23.) The ALJ did not include these limitations and noted that the "claimant has not alleged mental health conditions and the record does not contain a mental health diagnosis." (ECF No. 8-1 at 27; *see also* ECF No. 8-1 at 213.) The ALJ's finding is supported by the report of state agency psychological consultant Alvin Smith Ph.D., who stated that "claimant alleges abdominal pain – no mental allegations – claimant given psychological assessment due to peripheral nerve stimulator trial and implant – no mental MDI [medically determinable impairment] established." (*Id.* at 100.) The ALJ further noted that Urban was referred for an assessment of how his cognitive, emotional and behavioral functioning could affect his response to a peripheral nerve stimulator trial and implant and that evaluation did not produce abnormal findings or diagnose Urban with a mental health impairment. (*Id.* at 27 (citing ECF No 8-1 at 457-61).)

The ALJ recognized that Urban "endorsed cognitive issues and fatigue secondary to his medications," however, "his medication dosing was adjusted and he was able to drive to and from work and work part-time and his psychological examination was entirely normal." (*Id.* at 26–27 (citing ECF No. 8-1 at 457–61).) Accordingly, the ALJ's determination that Urban had no limitations in concentrating, persisting and maintaining pace and adapting and managing himself is supported by substantial evidence and will not be disturbed by this Court.

## III. The ALJ's Subjective Symptom Analysis Was Not Patently Wrong.

Finally, Urban contends that the ALJ's subjective symptom analysis was patently wrong because the ALJ improperly overlooked, mischaracterized, and rejected evidence that supported Urban's statements. (ECF No. 11 at 23–24.) When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of his [] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023). And a credibility finding is not "patently wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018).

In assessing Urban's subjective symptoms, the ALJ noted that Urban testified that his girlfriend did the household chores, shopping, and yardwork and helped him with bathing and dressing. (ECF No. 8-1 at 23.) Urban testified that on a typical day when he is not working, he takes his medications, naps, sits and stands as needed, and watches television. (*Id.*) The ALJ accepted that Urban's impairments caused chronic pain but that the medical evidence and other evidence of record was not consistent with the degree of limitation Urban alleged. (*Id.* at 26.) The ALJ found that "[g]iven the reasonably good examination findings and benefits from treatment," Urban could perform sedentary work within the adopted residual functional capacity. (*Id.* at 27.) To discredit Urban's testimony in this case, the ALJ pointed to Urban's endorsement of some lasting relief with treatment. The ALJ noted that Urban reported benefit from osteopathic interventions, nerve blocks, and medications. (*Id.* at 26.) In November 2021 and May 2022, Urban reported improvement in his pain and function with osteopathic intervention. (*Id.* (citing ECF No. 8-1 at 301, 304).) In June 2021, Urban reported 50% improvement in pain and functioning from his August 2020 nerve blocks. (*Id.*) In November 2021, he reported 50% improvement in pain and the ability to walk with nerve blocks. (*Id.* (citing ECF No. 8-1 at 372).) In April 2022, Urban reported only mildly irritating muscle spasms and was eager to continue nerve block treatment. (*Id.* (citing ECF No. 8-1 at 364).) In August 2022, Urban reported 50–75% effectiveness for 3.5–5 months in August 2022 and that cyclobenzaprine had been helpful with a recent flare up he experienced after going for a lot of walks. (*Id.* (citing ECF No. 8-1 at 397–401).) Urban further reported 60% pain relief and functional improvement in December 2022 and stability on Lyrica and that "things have been going well." (*Id.* at 26 (citing ECF No. 8-1 at 446, 451).)

The ALJ acknowledged Urban's cognitive issues and fatigue secondary to his medications but noted that his medication dosing was adjusted and he was able to drive to and from work, work part-time, and his psychological examination was "entirely normal." (*Id.* at 26–27.) Urban's contention that the ALJ's assessment of Urban's subjective complaints was lacking is without merit as the ALJ reasonably weighed Urban's allegations against a thorough evaluation of the medical evidence. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citation omitted); *see also* 42 U.S.C. §423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . . . Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability."). And, "an ALJ need not discuss every detail related to every factor" in assessing a claimant's subjective symptoms. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) (citing *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)). In determining that Urban could perform sedentary work, the ALJ reasonably considered Urban's treatments and the resulting improvement in his symptoms while acknowledging that the treatments did not completely alleviate his symptoms. Urban has failed to show that the ALJ's evaluation of his symptoms lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

As previously noted, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the bases for his conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Because none of Urban's asserted grounds provides a basis for remand, the Commissioner's decision is affirmed, and the case is dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 10, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge